

**U.S. Department of Justice** ~~FILED~~

*United States Attorney*

*District of Connecticut* 2013 APR 25  A 11: 15

U.S. DISTRICT COURT
BRIDGEPORT, CONN

*Connecticut Financial Center*          *(203)821-3700*
*157 Church Street, 25ᵗʰ floor*          *Fax (203) 672-6084*
*New Haven, Connecticut 06510*          *www.justice.gov/usao/ct*

April 25, 2013

3:13 cr 81 (MPS)

Ronald B. Resetarits, Esq.
Office of the Federal Public Defender
265 Church Street, Suite 702
New Haven, CT 06510-7005

> Re:   United States v. Amanda C. Bowden
>       Crim No.

Dear Mr. Resetarits:

This letter confirms the plea agreement between your client, AMANDA C. BOWDEN (the "defendant"), and the United States Attorney's Office for the District of Connecticut (the "Government" or "this Office") concerning the above-referenced criminal matter.

## THE PLEA AND OFFENSE

AMANDA C. BOWDEN agrees to waive her right to be indicted and to plead guilty to a one-count information charging her with false information and hoaxes, in violation of 18 U.S.C. § 1038(a)(1). She understands that, to be guilty of this offense, the following essential elements of the offense must be satisfied:

1.  The defendant intentionally conveyed false or misleading information under circumstances in which such information may reasonably have been believed; and

2.  Such information indicated that an activity would take place that would constitute a violation of Title 18 chapter 40, specifically, 18 U.S.C. § 844(f)(1) (explosive materials – malicious damage to federal property).

The elements of the "hoax offense" that was falsely conveyed, that is, 18 U.S.C. § 844(f)(1), are:

1.  The defendant planned maliciously to damage, destroy, or attempt to damage or destroy a building or other real property;

2.  By means of fire or an explosive; and

3.  The building or other real property was in whole or in part owned or possessed by, or leased to, any institution or organization receiving Federal financial assistance.

## THE PENALTIES

This offense carries a maximum penalty of five years imprisonment and a $250,000 fine. In addition, under 18 U.S.C. § 3583, the Court may impose a term of supervised release of not more than three years to begin at the expiration of any term of imprisonment. The defendant understands that, should she violate any condition of the supervised release, she may be required to serve a further term of imprisonment of up to two years with no credit for time already spent on supervised release.

The defendant also is subject to the alternative fine provision of 18 U.S.C. § 3571. Under this section, the maximum fine that may be imposed on the defendant is the greatest of the following amounts:  (1) twice the gross gain to the defendant resulting from the offense; (2) twice the gross loss resulting from the offense; or (3) $250,000.

In addition, the defendant is obligated by 18 U.S.C. § 3013 to pay a special assessment of $100 on each count of conviction.  The defendant agrees to pay the special assessment to the Clerk of the Court on the day the guilty plea is accepted.

The defendant is also subject to restitution, as discussed below.  Unless otherwise ordered, should the Court impose a fine or restitution of more than $2,500 as part of the sentence, interest will be charged on the unpaid balance of the fine or restitution not paid within 15 days after the judgment date.  18 U.S.C. § 3612(f).  Other penalties and fines may be assessed on the unpaid balance of a fine or restitution pursuant to 18 U.S.C. § 3572 (h), (I) and § 3612(g).

### Restitution

In addition to the other penalties provided by law, the Court may also order that the defendant make restitution under 18 U.S.C. § 3663, and the Government reserves its right to seek restitution on behalf of victims consistent with the provisions of § 3663.

## THE SENTENCING GUIDELINES

### Applicability

The defendant understands that the Court is required to consider any applicable Sentencing Guidelines as well as other factors enumerated in 18 U.S.C. § 3553(a) to tailor an appropriate sentence in this case and is not bound by this plea agreement. The defendant agrees that the Sentencing Guideline determinations will be made by the Court, by a preponderance of the evidence, based upon input from the defendant, the Government, and the United States Probation Office. The defendant further understands that she has no right to withdraw her guilty

plea if her sentence or the Guideline application is other than she anticipated, including if the sentence is outside any of the ranges set forth in this agreement.

Acceptance of Responsibility

At this time, the Government agrees to recommend that the Court reduce by two levels the defendant's adjusted offense level under § 3E1.1(a) of the Sentencing Guidelines, based on the defendant's prompt recognition and affirmative acceptance of personal responsibility for the offense. Moreover, should the defendant qualify for a decrease under 3E1.1(a) and her offense level determined prior to the operation of subsection (a) is level 16 or greater, the Government will file a motion with the Court pursuant to §3E1.1(b), which recommends that the Court reduce the defendant's Adjusted Offense Level by one additional level based on her prompt notification of her intention to enter a plea of guilty.  The defendant expressly understands that the Court is not obligated to accept the Government's recommendations on the reductions.

The above-listed recommendations are conditioned upon the defendant's affirmative demonstration of acceptance of responsibility, by (1) truthfully admitting the conduct comprising the offense(s) of conviction and truthfully admitting or not falsely denying any additional relevant conduct for which the defendant is accountable under Sentencing Guideline § 1B1.3, and (2) truthfully disclosing to the Probation Office personal information requested, including the submission of a complete and truthful financial statement detailing the defendant's financial condition.

In addition, the Government expressly reserves the right to seek denial of the adjustment for acceptance of responsibility if the defendant engages in any acts, unknown to the Government at the time of the signing of this agreement, which (1) indicate that the defendant has not terminated or withdrawn from criminal conduct or associations (Sentencing Guideline § 3E1.1); (2) could provide a basis for an adjustment for obstructing or impeding the administration of justice (Sentencing Guideline § 3C1.1); or (3) constitute a violation of any condition of release.  Moreover, the Government reserves the right to seek denial of the adjustment for acceptance of responsibility if the defendant seeks to withdraw her plea of guilty or takes a position at sentencing, or otherwise, which, in the Government's assessment, is inconsistent with affirmative acceptance of personal responsibility.  The defendant understands that she may not withdraw her plea of guilty if, for the reasons explained above, the Government does not make one or both of the recommendations or seeks denial of the adjustment for acceptance of responsibility.

Stipulation

Pursuant to § 6B1.4 of the Sentencing Guidelines, the defendant and the Government have entered into a stipulation, which is attached to and made a part of this plea agreement.  The defendant understands that this stipulation does not set forth all of the relevant conduct and characteristics that may be considered by the Court for purposes of sentencing.  The defendant understands that this stipulation is not binding on the Court.  The defendant also understands that

the Government and the United States Probation Office are obligated to advise the Court of any additional relevant facts that subsequently come to their attention.

Guideline Stipulation

The parties agree as follows:

The Guidelines Manual in effect on the date of sentencing is used to determine the applicable Guidelines range.

The defendant's base offense level under U.S.S.G. § 2A6.1(a)(1) is 12. Two levels are subtracted under U.S.S.G. § 3E1.1 for acceptance of responsibility, as noted above, resulting in a total offense level of 10.

Based on an initial assessment, the parties agree that the defendant falls within Criminal History Category I. The parties reserve the right to recalculate the defendant's Criminal History Category and corresponding sentencing ranges if this initial assessment proves inaccurate.

A total offense level 10, assuming a Criminal History Category I, would result in a range of 6 to 12 months of imprisonment under Zone B of the sentencing guidelines table, and a fine range of $2,000 to $20,000 under U.S.S.G. § 5E1.2(c)(3). The defendant is also subject to a supervised release term of two years to three years. U.S.S.G. § 5D1.2.

The parties agree that neither a downward nor an upward departure from the applicable sentencing ranges set forth above is warranted and that a sentence within the applicable ranges is reasonable. Accordingly, neither party will seek a departure or seek any adjustment not set forth herein. Moreover, the defendant will not seek a non-Guidelines sentence. Nor will either party suggest that the Probation Department consider a departure or adjustment not set forth herein, or suggest that the Court *sua sponte* consider a departure or adjustment not identified above.

The parties agree that the defendant's sentence should include a requirement of mental health evaluation and treatment.

The defendant expressly understands that the Court is not bound by this agreement on the Guideline ranges specified above. The defendant further understands that she will not be permitted to withdraw the plea of guilty if the Court imposes a sentence outside any of the ranges set forth in this agreement.

In the event the Probation Office or the Court contemplates any sentencing calculations different from those stipulated by the parties, the parties reserve the right to respond to any inquiries and make appropriate legal arguments regarding the proposed alternate calculations. Moreover, the Government expressly reserves the right to defend any sentencing determination, even if it differs from that stipulated by the parties, in any post-sentencing proceeding.

The defendant and the Government further agree that all other aspects of the sentence, including the imposition of any fine and the determination of the length and conditions of supervised release, about which the parties intend to make recommendations, will be left to the discretion of the Court.

### Waiver of Right to Appeal or Collaterally Attack Conviction and Sentence

The defendant acknowledges that under certain circumstances she is entitled to challenge her conviction and sentence. The defendant agrees not to appeal or collaterally attack in any proceeding, including but not limited to a motion under 28 U.S.C. § 2255 and/or § 2241, the conviction or sentence imposed by the Court if that sentence does not exceed 12 months, a three-year term of supervised release, a $20,000 fine, even if the Court imposes such a sentence based on an analysis different from that specified above. Similarly, the Government will not appeal a sentence imposed within or above the stipulated sentencing range. The Government and the defendant agree not to appeal or collaterally attack the Court's imposition of a sentence of imprisonment concurrently or consecutively, in whole or in part, with any other sentence. The defendant acknowledges that she is knowingly and intelligently waiving these rights. Furthermore, the parties agree that any challenge to the defendant's sentence that is not foreclosed by this provision will be limited to that portion of the sentencing calculation that is inconsistent with (or not addressed by) this waiver.

### Information to the Court

The Government reserves its right to address the Court with respect to an appropriate sentence to be imposed in this case. Moreover, the Government will discuss the facts of this case, including information regarding the defendant's background and character, 18 U.S.C. § 3661, with the United States Probation Office and will provide the Probation Officer with access to material in its file, with the exception of grand jury material.

## WAIVER OF RIGHTS

### Waiver of Right to Indictment

The defendant understands that she has the right to have the facts of this case presented to a federal grand jury, consisting of between sixteen and twenty-three citizens, twelve of whom would have to find probable cause to believe that she committed the offense set forth in the information before an indictment could be returned. The defendant acknowledges that she is knowingly and intelligently waiving her right to be indicted.

### Waiver of Trial Rights and Consequences of Guilty Plea

The defendant understands that she has the right to be represented by an attorney at every stage of the proceeding and, if necessary, one will be appointed to represent her.

The defendant understands that she has the right to plead not guilty or to persist in that plea if it has already been made, the right to a public trial, the right to be tried by a jury with the assistance of counsel, the right to confront and cross-examine the witnesses against her, the right not to be compelled to incriminate herself, and the right to compulsory process for the attendance of witnesses to testify in her defense. The defendant understands that by pleading guilty she waives and gives up those rights and that, if the plea of guilty is accepted by the Court, there will not be a further trial of any kind.

The defendant understands that, if she pleads guilty, the Court may ask her questions about each offense to which she pleads guilty, and if she answers those questions falsely under oath, on the record, and in the presence of counsel, her answers may later be used against her in a prosecution for perjury or making false statements.

### Waiver of Statute of Limitations

The defendant agrees that, should the conviction following defendant's plea of guilty pursuant to this plea agreement be vacated for any reason, then any prosecution that is not time-barred by the applicable statute of limitations on the date of the signing of this plea agreement (including any indictment or counts the Government has agreed to dismiss at sentencing pursuant to this plea agreement) may be commenced or reinstated against defendant, notwithstanding the expiration of the statute of limitations between the signing of this plea agreement and the commencement or reinstatement of such prosecution. The defendant agrees to waive all defenses based on the statute of limitations with respect to any prosecution that is not time-barred on the date the plea agreement is signed.

## ACKNOWLEDGMENT OF GUILT AND VOLUNTARINESS OF PLEA

The defendant acknowledges that she is entering into this agreement and is pleading guilty freely and voluntarily because she is guilty. The defendant further acknowledges that she is entering into this agreement without reliance upon any discussions between the Government and her (other than those described in the plea agreement letter), without promise of benefit of any kind (other than the concessions contained in the plea agreement letter), and without threats, force, intimidation, or coercion of any kind. The defendant further acknowledges her understanding of the nature of the offense to which she is pleading guilty, including the penalties provided by law. The defendant also acknowledges her complete satisfaction with the representation and advice received from her undersigned attorney. The defendant and her undersigned counsel are unaware of any conflict of interest concerning counsel's representation of the defendant in the case.

## SCOPE OF THE AGREEMENT

The defendant acknowledges that this agreement is limited to the undersigned parties and cannot bind any other federal authority, or any state or local authority. The defendant acknowledges that no representations have been made to her with respect to any civil or administrative consequences that may result from this plea of guilty because such matters are

- 6 -

solely within the province and discretion of the specific administrative or governmental entity involved. Finally, the defendant acknowledges that this agreement has been reached without regard to any civil tax matters that may be pending or which may arise involving her.

## COLLATERAL CONSEQUENCES

The defendant further understands that she will be adjudicated guilty of each offense to which she has pleaded guilty and will be deprived of certain rights, such as the right to vote, to hold public office, to serve on a jury, or to possess firearms. The defendant understands that pursuant to section 203(b) of the Justice For All Act, the Bureau of Prisons or the Probation Office will collect a DNA sample from the defendant for analysis and indexing. Finally, the defendant understands that the Government reserves the right to notify any state or federal agency by which she is licensed, or with which she does business, as well as any current or future employer of the fact of her conviction.

## SATISFACTION OF FEDERAL CRIMINAL LIABILITY; BREACH

The defendant's guilty plea, if accepted by the Court, will satisfy the federal criminal liability of the defendant in the District of Connecticut as a result of her participation in all conduct set forth in the Information and the attached Stipulation of Offense Conduct.

The defendant understands that if, before sentencing, she violates any term or condition of this agreement, engages in any criminal activity, or fails to appear for sentencing, the Government may void all or part of this agreement. If the agreement is voided in whole or in part, defendant will not be permitted to withdraw her plea of guilty.

## NO OTHER PROMISES

The defendant acknowledges that no other promises, agreements, or conditions have been entered into other than those set forth in this plea agreement, and none will be entered into unless set forth in writing, signed by all the parties.

This letter shall be presented to the Court, in open court, and filed in this case.

Very truly yours,

DAVID B. FEIN
UNITED STATES ATTORNEY

HENRY K. KOPEL
Assistant United States Attorney

The defendant certifies that she has read this plea agreement letter and its attachment(s) or has had it read or translated to her, that she has had ample time to discuss this agreement and its attachment(s) with counsel and that she fully understands and accepts its terms.

_____          4/25/13
AMANDA C. BOWDEN                          Date
The Defendant


I have thoroughly read, reviewed and explained this plea agreement and its attachment(s) to my client who advises me that she understands and accepts its terms.

_____          4/25/13
RONALD B. RESETARITS, ESQ.                Date
Attorney for the Defendant

## STIPULATION OF OFFENSE CONDUCT

The defendant AMANDA C. BOWDEN and the Government stipulate to the following offense conduct that gives rise to the defendant's agreement to plead guilty to the information:

In early February 2013, a cooperating witness ("CW") contacted the FBI New Haven field office and advised that the CW had been exchanging text messages with a female subject who claimed to be planning a suicidal mass shooting at Gateway Community College in downtown New Haven. Among other things, the CW directed the FBI to the subject's Facebook page, and identified a photo of the subject posted on that page. Based on this and other information, the FBI was able to identify the CW's female correspondent as AMANDA C. BOWDEN, a 19-year-old female residing at 11 Ozone Road, East Haven, Connecticut.

The CW authorized the FBI to download from the CW's telephone, all texts exchanged between the CW and BOWDEN. The following are excerpts of some representative texts sent by BOWDEN to the CW. On February 5, 2013, BOWDEN texted the CW, "I was going to f--king shoot up my school haha well I was thinking of it". The CW asked why and what school, to which BOWDEN responded, "Because I don't like people a lot of reasons . . . Lol gateway I hope I am not scaring you". ("Lol" is commonly understood to mean "laughing out loud.") Later that same day BOWDEN texted the CW, "I already have everything planned out lol . . . I'm killing myself after though . . . If Im going to commit suicide might as well take people down with me who made me miserable . . . the whole damn place is going down". BOWDEN also texted, "I was pissed when the sandy hook happened lol . . . Cuz I wanted to be the next big one".

The CW went along with and displayed interest in BOWDEN's plan. On February 7, 2012, BOWDEN told the CW that she planned to use a bomb in the attack at Gateway Community College. Among other things, she texted the CW that day, "I want the whole place to just explode lmfao wouldn't that be funny". ("lmfao" is understood to mean, "laughing my f--king ass off.") When the CW asked BOWDEN, "How many lives do you think will be in our hands," Bowden replied, "Hundreds hopefully with a bomb". BOWDEN also texted, "Best way to go out . . . Cuz I hate people . . . I drew parts of the school out as to where to go first and the timing of it all . . . We will be killing people and ill be so happy haha . . . ." Later that day, BOWDEN explained, "Ill shoot a cop . . . I'm trying to figure out how to get around them that's why I want to bomb it first then go in hopefully wiping out some security".

Later, when the CW reported this matter to the FBI, arrangements were made for an FBI agent acting in an undercover ("U/C") capacity to take the place of the CW as BOWDEN's phone-texting correspondent. BOWDEN continued to text the U/C about her plans to conduct a suicidal mass shooting/bombing at Gateway Community College. On February 12, 2013, BOWDEN texted the U/C, "I just made a bomb for us so we can set it off the day we plan this out . . . A napalm one". The U/C asked and received from BOWDEN a description of how she had made the napalm bomb. FBI New Haven agents having experience and training in bomb technology confirmed that BOWDEN had correctly described how to construct a homemade napalm bomb.

That same day, BOWDEN also texted the U/C that she had made another napalm bomb from a lightbulb, which could be screwed into a socket, "then when it's turned on it covers the person in napalm and they die lol . . . then they BURN!"

On February 13, 2013, in an unrecorded telephone conversation with the U/C, BOWDEN stated that she had made at her house, the napalm explosives intended for the school bombing. BOWDEN also began discussing the Newtown/Sandy Hook school shooting, praising Adam Lanza – the perpetrator of that shooting – for what he did, saying we should have bullet proof vests like Lanza to make it harder for the police to kill us during the shooting at Gateway, and reiterating her desire to one-up Lanza.

On February 14, 2013, BOWDEN promised the U/C that she would not go through with the plan without him.

BOWDEN's communications that included references to the making and deployment of bombs as part of the plan occurred during the time frame February 7-13, 2013.

On February 19, 2013, investigating agents conducted a court-authorized search of BOWDEN's residence at 11 Ozone Road East Haven, Connecticut.   Neither firearms nor explosive devices or materials were found in the search.  On that same day, BOWDEN elected to waive her *Miranda* rights to remain silent, and admitted to investigating agents that she had sent the false text messages and had made the false telephonic statements about having made napalm bombs.

Federal financial aid programs are available for students at Gateway Community College in New Haven, and as a result, Gateway Community College receives substantial amounts of federal financial aid funds.

The written stipulation above is incorporated into the preceding plea agreement.  The defendant and the Government reserve their right to present additional relevant offense conduct to the attention of the Court in connection with sentencing.

AMANDA C. BOWDEN
The Defendant

HENRY K. KOPEL
Assistant United States Attorney

RONALD B. RESETARITS, ESQ.
Attorney for the Defendant